UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,                Case No. 22-cr-20608

v.                                  Hon. Shalina D. Kumar

Isiah Claiborne,

       Defendant.

_____

### Defendant Isiah Claiborne's
### Motion to Suppress Physical Evidence
### And For an Evidentiary Hearing

Defendant Isiah Claiborne, represented by attorney Henry M. Scharg, moves this Honorable Court to suppress all physical evidence obtained from the unlawful search of Defendant's residence, 3711 Dakota Ave., Flint, Michigan, on October 1, 2021, executed by the Michigan State Police, the Flint Police, and the FBI in violation of the Fourth Amendment to the U.S. Constitution and for an evidentiary hearing.

In compliance with E.D. Mich. LR 7.1(a)(2)(A), defense counsel contacted the Assistant U.S. Attorney, Jules Deporre, on June 8, 2024,

explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

                          Respectfully submitted,

                          /s/ *Henry M. Scharg*
                          HENRY M. SCHARG (P28804)
                          Attorney for Defendant
                          30445 Northwestern Hwy, Suite 225
                          Farmington Hills, Michigan 48334
                          (248) 596-1111
                          hmsattyatlaw@aol.com

Dated: June 11, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,
    Plaintiff,                      Case No. 22-cr-20608

v.                                  Hon. Shalina D. Kumar

Isiah Claiborne,
    Defendant.
_____

## Brief in Support of
## Defendant's Isiah Claiborne's Motion to Suppress Physical Evidence

### Facts

Defendant Isiah Claiborne is charged in the Superseding Indictment with Count One: Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance; Count Two: Possession with Intent to Distribute Heroin; Count Three: Possession with Intent to Distribute Methamphetamine; and Count Four: Possession with Intent to Distribute Cocaine. (Super. Indict., ECF No. 28, PageID.79).

Law enforcement in this case began an investigation into the fatal shooting of Devaroe Davis, which occurred on August 17, 2021, in the parking lot of the Eagle Ridge Square Apartments. (Exhibit A – Warrant Affidavit, batch p. 36, ¶ 1). An unknown individual, "G-1," told the police

that Codefendant Clifton Terry had shot at Davis and another person earlier on July 27, 2021. *Id*. at p. 37, ¶ 4. A person who lived at the apartments told the police that one of the suspects in the August 17, 2021 shooting of Davis was a black male with gold tipped dreadlocks. *Id*. at p. 37, ¶ 5.

Security video from the apartments showed a black Ford Edge drive into the parking lot and stop next to Davis's vehicle on the date Davis was murdered. *Id*. at p. 39, ¶ 10. The security video also showed a white Pontiac G6 without a license plate drive through the parking lot multiple times about an hour before the shooting. *Id*. at p. 40–41, ¶ 12. About 23 minutes later, the Ford Edge and Pontiac G6 were in the lot at the same time. *Id*.

Earlier in the day of the August 17, 2021 shooting, an off-duty Flint Police officer saw a Black Ford Edge and White Pontiac G6 at a car wash, and he saw the occupants of both vehicles interacting. *Id*. at p. 41–42, ¶ 13–14. Security video from the car wash showed their interaction. *Id*. at p. 42, ¶ 15. Clifton Terry was driving a black Ford Edge with a white male passenger inside, and Isiah Claiborne was allegedly driving a white Pontiac. *Id*. at p. 42, ¶ 15. A white Pontiac G6 was registered to Claiborne. *Id*. at p. 43, ¶ 16.

The Flint Police have a "Flock System" that uses cameras to read license plates. *Id*. at p. 43, ¶ 17. A Ford Edge and Pontiac G6 were captured

on the Flock System were spotted in the vicinity of the Eagle Ridge Square Apartments the day of and just prior to the homicide of Davis at. *Id*. at p. 43, ¶ 17. Law enforcement conducted surveillance at Claiborne's residence at 3711 Dakota, Flint, and saw a Pontiac G6 parked their "frequently" and within the 48 hours prior to applying for the search warrant *Id*. at p. 45–46, ¶¶ 18–19.

Based upon those facts, the Affiant for the warrant, MSP Detective Justin Clarke, believed Claiborne was driving the Pontiac G6 on the date of Davis's shooting "acting as a lookout or surveilling Davis prior to his murder." *Id*. at p. 46, ¶ 20. Det. Clarke also believed there was probable cause to believe Claiborne communicated via cell phone with the people in the Ford Edge. *Id*. Clarke also claimed that it was "common to find controlled substances and credit cards/gift cards with scanners used to commit fraud" "in houses involving associates with [Codefendant Terry]." *Id*. at p. 49, ¶ 31.

Law enforcement obtained the search warrant and executed it on October 1, 2021, seizing drugs that resulted in the charges brought in the Superseding Indictment, together with Claiborne's cellular phone, several firearms and ammunition.

## Argument

**I.  The search warrant lacked probable cause to search Defendant Claiborne's residence**.

The Fourth Amendment prohibits the issuance of a search warrant without probable cause. *U.S. Const. Amend. IV*. Probable cause exists when there is "a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v Loggins*, 777 F.2d 336, 338 (6th Cir. 1985)). "In determining whether probable cause existed to believe that evidence of criminal activity was located in a particular place at the time the search warrant was issued, a District Court considers the 'totality of the circumstances' presented in the search warrant affidavit." *United States v. Bullock*, 130 F. App'x 706, 717 (6th Cir. 2005) (citation omitted).

A magistrate issuing a warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). A search warrant

affidavit must contain sufficient allegations to support the magistrate's finding that there is a "nexus between the place to be searched and the evidence sought." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir.2005) (citation omitted).

An officer's statement that affiants have received reliable information from a credible person and do believe that evidence of criminal conduct is stored in a home, is inadequate. *Gates*, 462 U.S. at 239 (citation omitted). That would be "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*.

An affidavit supporting a search warrant must describe a "nexus between the place to be searched and the evidence sought." *United States v Carpenter, 360 F.3d 594 (6th Cir. 2004)*. "The critical element is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Fraizer, 423 F.3d 526, 532 (6th Cir. 2005)*. "[W]hether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the

circumstances." *United States v. Brown, 828 F.3d 375, 382 (6th Cir. 2916)(citing Illinois v. Gates, 462 U.S. 213, 238(1983); United States v. Myles, 2:17-cr-20700, ECF No. 22, Page ID. 117-133 (E.D. Mich. 2018).*

Mr. Claiborne maintains that the government has failed to demonstrate a reasonable basis upon which to conclude that the specific things searched for were located in the Dakota residence. In this case, an unknown individual, "G-1," told the police that codefendant Terry had shot at decedent Davis and another person a couple of weeks before Davis was killed. (Ex. A, p. 37, ¶ 4). There is no indication about who G-1 is or the basis of his/her hearsay allegation that Terry had shot at Davis earlier. There was no indication about whether this was a first-hand observation or just rumors flying through the community. The warrant does not explain the veracity of that allegation or why G-1 is reliable, and there was no investigation by Affiant Clarke to corroborate G-1's allegation. There was no indication that G-1 had provided reliable information to law enforcement in the past. The allegation is an important part of the warrant that connects Terry to the shooting and killing of Davis, which is then used to connect Claiborne to Terry and the shooting.

"[A]n affidavit relying on hearsay 'is not to be deemed insufficient on that score, **so long as a substantial basis for crediting the hearsay is**

**presented**.'" *Gates*, 462 U.S. at 241–242 (emphasis added) (citation omitted). A magistrate may credit such hearsay only "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past." *United States v. McIntosh*, 109 F. App'x 65, 69 (6th Cir. 2004) (citation omitted). An affidavit must state facts supporting an independent judicial determination that the informant is reliable such as a detailed description, first-hand observation, and independent corroboration. *United States v. Allen*, 211 F.3d 970, 975–976 (6th Cir. 2000).

Additionally, Affiant Clarke added the claim that it was "common to find controlled substances and credit cards/gift cards with scanners used to commit fraud" "in houses involving associates with [Codefendant Terry]." (Ex. A, p. 49, ¶ 31). But a warrant cannot be supported "upon a mere affirmation of suspicion and belief without any statement of adequate supporting facts." *Nathanson v. United States*, 290 U.S. 41, 46, 54 S. Ct. 11, 13 (1933). Clarke does not explain how he was aware that Terry's associates commonly possess controlled substances or scanners. The claims are unsupported by any investigation. Nothing in the Affidavit supports a finding of probable cause to believe Claiborne possessed evidence of criminal conduct including controlled substances, fraudulent credit cards,

weapons, ammunition, electronic devices, cellphones, subscriber information, detail call records, social media accounts related to the homicide of Devaroe Davis, or that those items would be found at Mr. Claiborne's residence. Det. Clarke's limited knowledge that Claiborne was seen with Terry once at a car wash is not enough to find probable cause for issuance of a search warrant for Claiborne's residence by that association.

The only time Claiborne was allegedly seen driving a white Pontiac G6 was when he was allegedly at the car wash earlier the day of the shooting. *Id.* at p. 42, ¶ 15. The security video did not show who was driving when the vehicle was in the apartment parking lot. Also, Affiant Clarke makes an inferential leap to suggest that Claiborne was acting as a lookout, surveilling Davis, and communicating with the individuals in a black Ford Edge. *Id.* at p. 46, ¶ 20. Those are not facts, and the inference is not based upon any specific information or investigation about Claiborne's relationship with Terry and/or with his associates, or how and if they commonly communicate.

**II.     The evidence must be suppressed under the exclusionary rule, and law enforcement did not have an objectively reasonable, good-faith belief that their conduct was lawful**.

The evidence seized from Claiborne's residence was obtained as the fruit of the officers' unlawful entry into 3711 Dakota Ave. on October 1,

2021. Sgt. Clarke's Affidavit relied on unreliable hearsay, unsubstantiated allegations about Terry's associates, and an unfounded inference that Claiborne was aiding and abetting anyone in the fatal shooting of Davis. The Affidavit lacked probable cause for the issuance of the search warrant.

The Supreme Court created the exclusionary rule—a prudential doctrine which prohibits "evidence obtained in violation of the Fourth Amendment [from] be[ing] used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). The rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id*. at 348. However, "[t]he fact that a Fourth Amendment violation occurred … does not necessarily mean that the exclusionary rule applies." *United States v. Moorehead*, 912 F.3d 963, 967 (6th Cir. 2019) (citation omitted).

The Supreme Court thus has created a "good-faith" exception to the exclusionary rule: the introduction of evidence obtained in violation of the Fourth Amendment is permitted in criminal trials when the evidence is "obtained in the reasonable, good-faith belief that a search or seizure was in accord with the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 909, 104 S. Ct. 3405, 3413 (1984) (citations omitted). Courts must ask "whether a reasonably well-trained officer would have known that the search

was illegal despite the magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (citations omitted). *Leon* delineated at least four instances in which a well-trained officer would have known a search was illegal, thus barring application of the good faith exception:

> [1] [I]f the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . [2] where the issuing magistrate wholly abandoned [her] judicial role . . . [3] [where] a warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . [and [4] where] a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. [*Leon*, 468 U.S. at 923.]

When law enforcement officials have acted unreasonably, the exclusionary rule exists to suppress evidence gained through unconstitutional means. *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ("[T]he way to ensure [constitutional and statutory] protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes.").

The purpose behind exclusion is not to remedy the harm suffered by the victim of the illegal search, but rather "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment

against unreasonable searches and seizures." *Calandra*, *414 U.S. at 347, 94 S.Ct. 613*.

Here, the search warrant was based on an Affidavit so lacking in indicia of probable cause as to render official belief in their existence entirely unreasonable. Exclusion in this case would protect the right to privacy for others after this case, and it would preserve judicial integrity. It would deter future unlawful police conduct such as the conduct here by inserting into the Affidavit unreliable hearsay, an unsubstantiated allegation about Codefendant Terry's associates, and an unfounded inference that Claiborne was aiding and abetting the fatal shooting of Devaroe Davis.

**III. Entitlement to an evidentiary hearing**.

"An evidentiary hearing is required 'only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *U.S. v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (citations omitted). Defendant Claiborne is entitled to an evidentiary hearing because he contests issues of fact in the Affidavit that resulted in the unlawful entry and search of his home without probable cause.

WHEREFORE, Defendant moves this Honorable Court to order an evidentiary hearing and to suppress at trial all evidence seized from Defendant's residence at 3711 Dakota, Flint, Michigan on October 1, 2021.

        Respectfully submitted,

        /s/ *Henry M. Scharg*
        HENRY M. SCHARG (P28804)
        Attorney for Defendant
        30445 Northwestern Hwy, Suite 225
        Farmington Hills, Michigan 48334
        (248) 596-1111
        hmsattyatlaw@aol.com

Dated: June 11, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,                        Case No. 22-cr-20608

v.                                     Hon. Shalina D. Kumar

Isiah Claiborne,

      Defendant.

_____

### Certificate of Service

I certify that on June 11, 2024, the above Motion was filed with the Clerk of the Court using the CM/ECF system, which served the document(s) to the parties of record.

                                              /s/ *Henry M. Scharg*
                                              Henry M. Scharg (P28804)
                                              Attorney for Defendant