UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                 Plaintiff,

v.

ISIAH L. CLAIBORNE,

                 Defendant.

CASE NO: 22-CR-20608

HON. SHALINA D. KUMAR
United States District Judge

HON. CURTIS IVY, JR.
United States Magistrate Judge

_____

**The United States of America's Response in Opposition
to Isiah Claiborne's Motion to Suppress Physical Evidence**

_____

On October 1, 2021, law enforcement officers executed a search warrant at Defendant Isiah Claiborne's residence. Officers were investigating a homicide, and during the search they found and seized large quantities of drugs including over a kilogram of heroin, over 300 grams of methamphetamine and some cocaine. A grand jury indicted Claiborne and his co-defendant Terry, for several drug trafficking charges. Claiborne has filed a motion to suppress all of the physical items seized during the execution of the search warrant at his home. The Court should deny Claiborne's motion because officers conducted the search pursuant to a valid search warrant which was supported by probable cause that evidence of the homicide would be at Claiborne's home. Officers were entitled to seize items in plain view that were clearly contraband or evidence of drug trafficking (including the drugs and a digital scale with powder residue). Even if

1

the Court were to find that the search warrant affidavit did not establish probable cause, the *Leon* good faith exception renders the evidence admissible. The Court should only look within the "four corners" of the affidavit to determine whether there was probable cause and whether *Leon* good faith applies, but the government concurs in Claiborne's request for an evidentiary hearing on whether the digital scale and drugs were found in plain view.

### Factual Background

In September 2021, state, local and federal law enforcement were investigating the murder of Devaroe Davis which had occurred in August 2021. On September 30, 2021, Michigan State Police Detective Justin Clarke, the lead investigator for the homicide case, submitted an affidavit and application for a warrant to search several locations including Claiborne's residence at 3711 Dakota Avenue in Flint. (Gov. Ex. 1, Affidavit and Application for Search Warrant, at ¶ 1).[1]

The affidavit and application for the warrant was approximately 14 pages long, included photographs and contained the following information pertinent to Claiborne's residence:

---

[1] The search warrant affidavit and the other exhibits referenced in this response are subject to a protective order. (ECF No. 40, Page ID. 112). The exhibits also relate to an ongoing state murder case. The government will move to file the exhibits under seal, and will submit them in a separate filing not attached to this response.

- Officers were investigating the shooting death of Devaroe Davis. Officers were initially dispatched to the Eagle Ridge Square Apartment Complex at about 4:05 on August 17, 2021.  At the scene, officers found Davis dead from multiple gunshots. (Gov. Ex. 1, at ¶ 1).

- Davis's girlfriend told police that Davis was in a "rap beef" with Cliff Mac. (Id. at ℙ 4).

- Cliff Mac is the nickname for Clifton Terry. (Id. at ¶ 3).

- Davis's girlfriend said that a few weeks before the homicide, Cliff Mac (Terry) had shot at Davis and another man at a Flint-area convenience store. (Id. at ¶4). Detective Clarke was aware of that shooting. (Id.).

- Claiborne met with Terry before the homicide at around 11:30 am, at a car wash. (Id. at ¶¶ 13, 14 & 15). Their interactions were recorded on the car wash's surveillance video. (Id. at ¶ 13).

- The car wash video showed that Terry and another man were at the car wash in a black Ford Edge with a Michigan license plate EHH7373, and Claiborne was there in a white Pontiac G-6 with no license plate. (Id. at ¶ 15). The Pontiac G-6 had a sunroof and window tint. (Id. at ¶ 13).

- Claiborne had a white Pontiac G-6 registered to him. (Id. at ¶ 16)

- While at the car wash, Claiborne carried an object from the Pontiac G-6 and put it in the Ford Edge. (Id. at ¶ 14).

3

- Later that afternoon, a license plate camera 500 feet from the entrance to the Eagle Ridge Apartment photographed the Ford Edge with Michigan license plate EHH7373 at 2:22 pm, and it photographed a white Pontiac G-6 with a sunroof, window tint and no license plate at 2:59 pm, 3:20 pm, and 3:22 pm. (Id., photos at page 9-10).

- Davis, the victim, was fatally shot while sitting in a Chevrolet Traverse in a parking spot in front of the Eagle Ridge apartments. Officers were dispatched to the scene at about 4:05 pm. (Id. at ¶ 1).

- The Eagle Ridge Apartments had a surveillance video which recorded the homicide scene. (Id. at ¶ 10).

- The apartment complex's surveillance video showed a white Pontiac G-6—which appeared to have a sunroof, tinted windows, and no license plate—drive through the apartment parking lot multiple times about an hour before the homicide. (Id. at ¶ 12).

- A black Ford Edge drove into the Eagle Ridge parking lot around 3:21 pm, and it parked in the lot. (Id. ¶ 11).

- A Pontiac G-6 with a sunroof, tinted windows and no license plate drove though the lot at about 3:23 pm, and it drove by the Ford Edge, which was parked in the apartment parking lot. (Id. at ¶ 12.)

4

- The Ford Edge parked next to Davis's vehicle. The Ford Edge then drove off at a high rate of speed and Davis's vehicle rolled back from its parking spot. (Id. at ¶ 10). When police responded to the homicide scene, Davis's vehicle was still running and had appeared to have rolled away from a parking spot. (Id. at ¶ 1.)

- During surveillance of Claiborne, officers saw a white Pontiac G-6 with a sunroof and tinted windows frequently parked in front of Claiborne's residence at 3711 Dakota Avenue. (Id. at ¶ 18). The Pontiac G-6 was there on August 9, 2021 (prior to the homicide on August 17, 2021), and officers took photographs. (Id. at ¶ 18). Officers also observed it parked at 3711 Dakota within two days of the search warrant application. (Id. at ¶ 19).

- Based on the above facts and other facts in the affidavit, Detective Clarke believed there was probable cause that Claiborne was in the Pontiac G-6 and acted as a lookout during Davis's murder or surveilled Davis prior the murder, and that Claiborne used a cellular phone to communicate with the people in the Ford Edge. (Id. at 20).

The warrant application sought to search 3711 Dakota Avenue and other locations for "cellphones… and the contents therein … papers and effects showing ownership, occupancy dominion and/or control over the [residence], …. vehicles

located at the residence and the sales receipt or other documents related to the …

Pontiac G6 …, and any other evidence of the homicide of Devaroe Davis….” (Id.

at page 14-15.)

The affidavit also contained a statement that Detective Clarke was aware

“that it is common to find controlled substances and credit cards/ gift cards with

scanners … in houses associated with Cliff Mac.” (Id. at ¶ 31). And the search

warrant application sought permission to seize “controlled substances, gift cards

and scanners….” (Id. at page 15.)

On September 30, 2021, a state district court judge approved the application

and signed the warrant. (Gov. Ex. 2, Approved Application and Search Warrant for

3711 Dakota Avenue, Flint). When police executed the warrant the following day,

October 1, 2021, they found 994.2 grams of heroin, 300.3 grams of

methamphetamine, a digital scale with powder residue and a bowl on a garage

cabinet (the bowl contained suspected methamphetamine). These items are

depicted in the photographs below.

*Digital scale with powder residue:*



*Scale, bowl, and bags containing narcotics (methamphetamine, cocaine and heroin) photographed in their initial location:*



*Bags containing controlled substances photographed after police put them on the floor:*



Officers also found 129.7 grams of heroin in a backpack in the kitchen

pantry, depicted below.

*Contents of the black backpack in the kitchen pantry which contained heroin:*



 They found 87 pills containing methamphetamine that were in a knotted

baggie on the top shelf of the kitchen closet, depicted below.

*Multi-colored pills (suspected ecstasy which tested positive for methamphetamine):*



Additionally, officers found six jars of marijuana located in a front hall closet, a loaded 9mm caliber pistol next to the marijuana, and a loaded 5.7 caliber pistol in the purse of Claiborne's fiancé. Officers also saw an open box of unused aluminum cans, which they photographed but did not seize. As discussed below, the cans were similar to cans which contained approximately ten pounds of methamphetamine that were in an intercepted parcel that was addressed to the home. That parcel was seized in March 2021, prior to the search warrant. And officers found ammunition in various locations, paperwork and other items which showed that Claiborne and his girlfriend lived at the home, and they found six cellular phones.

A few hours after the search, Claiborne was charged in a federal criminal complaint with controlled substance offenses. (Complaint: ECF No. 1). A federal grand jury subsequently issued an indictment (ECF No. 18) and then a superseding indictment (ECF No. 28). The pending superseding indictment charges:

- Count 1- Claiborne and Clifton Terry, conspiracy to distribute 500 grams or more of methamphetamine;

- Count 2- Claiborne, possession with intent to distribute a kilogram of heroin;

- Count 3- Claiborne, possession with intent to distribute 50 grams or more of methamphetamine; and,

- Count 4- Claiborne, possession with intent to distribute cocaine.

10

The state has also charged Claiborne, Terry, and another defendant with the murder of Devaroe Davis, along with other related charges. *See* Case No. 22TC1837-FY, Sixty Seventh District Court, Genesee County, Michigan.

Claiborne has filed a motion to suppress physical evidence obtained during the search of his home. (Def.'s Motion to Suppress, ECF No. 54). As discussed below, the Court should deny the motion to suppress.

## Discussion

Officers executed a valid search warrant at 3711 Dakota Avenue. The affidavit established probable cause to search Claiborne's home of evidence of Davis's homicide, and officers found controlled substances in plain view. Even if the affidavit did not set forth probable cause, the police acted in good faith and suppression would not be an appropriate remedy.

### The search warrant affidavit established probable cause that evidence of Davis's homicide would be at Claiborne's residence.

In reviewing another court's decision to issue a search warrant, this Court should afford "great deference" to the issuing court's determination of probable cause. *United States v. Sanders*, No. 21-5945, 2024 WL 3218723, at *2 (6th Cir. June 28, 2024) (en banc) (internal quotations omitted). A reviewing court should only overturn the issuing judge's probable cause determination if the issuing judge "arbitrarily exercised" his or her authority. *Id*. The reviewing court need not determine whether it would have issued the same warrant. *Id*. "In the end, what

11

matters is whether the issuing judge had a 'substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *Id.* quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

In conducting its review, the reviewing court should look to the four corners of the affidavit, and not interpret the affidavit in a hypertechnical manner, but rather should take a common-sense approach that looks to the totality of the circumstances. *See United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (internal quotes and citation omitted); *Sanders*, No. 21-5945, 2024 WL 3218723, at *4.

The search warrant affidavit in this case demonstrated probable cause. It presented evidence that Clifton Terry had previously been in a "rap beef" with the victim. (Gov. Ex. 1, Affidavit and Application for Search Warrant, at ¶¶ 3 & 4). A few hours before the murder, the car wash surveillance video showed Clifton Terry in a black Ford Edge. (Id. at ¶¶ 13-15). While at the car wash, Terry met with Claiborne, who was in the Pontiac G 6. (Id.) A few hours later, the Ford Edge and the Pontiac G-6 were captured on video at the scene of the homicide. (Id., photos at 9-10, ¶¶ 10-12). The surveillance video showed the Pontiac G 6 driving around the apartment complex (id. at ¶ 12), and it showed the Ford Edge parked next to the victim's car and then speed off (id. at ¶ 10). After the Ford Edge speeded off, officers were dispatched to the scene and found the victim dead from gunshot

wounds. (Id. at ¶ 1). The affidavit also showed that the Pontiac G-6 was located at Claiborne's residence before and after the murder. (Id. at ¶¶ 18 & 19). And it was there shortly before officers executed the search warrant. (Id. at ¶ 19). The totality of these facts easily clear the probable cause standard, which is "not a high bar." *Sanders*, 2024 WL 3218723, at *4.

Claiborne challenges the sufficiency of the affidavit on three grounds. First, he claims the statement by the victim's girlfriend—that Terry (also known as Cliff Mac) had shot at the victim a few weeks before the murder— was insufficient to support probable cause because it was unsupported hearsay. (Def. Br., ECF No. 54, PageID.158). But Detective Clarke's affidavit made clear that he knew the identity of the victim's girlfriend. (Gov. Ex. 1, at ¶ 2). She was not an anonymous tipster nor a "professional informant" but rather an "honest citizen." The information she provided was therefore reliable. *See Lester v. Roberts*, 986 F.3d 599, 609 (6th Cir. 2021) ("The Supreme Court has recognized that '[i]nformants' tips doubtless come in many shapes and sizes from many different types of persons,' ranging from the professional 'informant' to the 'honest citizen.'… And we have recognized that a statement from a witness known to the police is 'generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability.'") (internal citations omitted).

And the affidavit included much more than the girlfriend's statement about the prior shooting. She also told Detective Clarke that Terry was in a "rap beef" with the victim. (Gov. Ex. 1 at ¶ 2). Detective Clarke knew Terry was a rapper. (ID. at ¶ 3). And Detective Clarke was able to corroborate the information she provided about the prior shooting, because he independently knew about it. (Id. at ¶ 4). Most critically, the affidavit showed that Terry had been in a Black Ford Edge a few hours before the murder (id. at ¶¶ 13, 14 & 15), and that the same black Ford Edge was parked next to the victim's car and speeded away from the scene before responding officers found the victim dead in his vehicle. (Id. at ¶¶1 & 10). This Court should consider the totality of the circumstances set forth in Detective Clarke's affidavit. *See Sanders*, No. 21-5945, 2024 WL 3218723, at *4. It should not look at just one of the facts in isolation.

Second, Claiborne argues that the affidavit included an unsupported statement that Detective Clarke was aware that controlled substances and credit cards scanners are commonly in houses of Clifton Terry's associates. (Def. Br., ECF No. 54, PageID. 159). Even if Detective Clarke had not included this statement, and even if the search warrant did not allow police to seize drug evidence or credit card scanners, there was still ample probable cause to search the house for evidence of the homicide. And as discussed below, the drug evidence was in plain view when police executed the search at Claiborne's home. Officers

14

may lawfully seize an item that is outside the scope of a search warrant if it is in plain view and if officers have probable cause to believe the item is contraband or evidence of criminal activity. *See United States v. Blair*, 214 F.3d 690, 698 (6th Cir. 2000). Here, the officers were lawfully at Claiborne's home to execute the search warrant and seize evidence of the homicide and they saw drugs in plain view.

Third, Claiborne claims that Detective Clarke's "limited knowledge that Claiborne was seen with Terry once at a car wash is not enough to find probable cause" to search Claiborne's residence. (Def. Br., ECF. No. 54, PageID, 160). Claiborne claims that affidavit is insufficient because the apartment surveillance video did not show who was driving the Pontiac G-6 when it was at the murder scene. But Claiborne is again inviting the Court only to look narrowly at certain isolated facts, rather than the totality of the circumstances set forth in the affidavit. Besides the fact that the car wash video showed Claiborne driving the Pontiac G-6 hours before the murder, the affidavit also noted that Claiborne had had a white Pontiac G-6 registered to him (id. at ¶ 16). And the affidavit stated that the Pontiac G-6 was "frequently parked at Claiborne's residence" and that officers saw it there before the homicide and after the homicide—within two days of executing the warrant (id. at ¶¶ 18 & 19). The fact that the Pontiac G-6 was parked at Claiborne's residence directly connected evidence of the homicide to Claiborne's residence.

15

Further, the facts that Terry (in the Ford Edge) and Claiborne (in the Pontiac G-6) had met at the car wash, and that Claiborne put an object into the Ford Edge, and that the Pontiac G-6 and the Ford Edge were at the murder scene, all supported Detective Clarke's inference that there was a "fair probability" that Claiborne's cellular phone contained records of communications that would be evidence of the homicide, and a fair probability that other evidence of the homicide would be at Claiborne's residence. It is not enough for Claiborne to suggest a possibility that somebody else was driving the Pontiac G-6 when it was at the murder scene. "[A]n issuing judge need not eliminate every alternative explanation to find a 'fair probability' that contraband [or evidence of a crime] will be present. *Sanders*, 2024 WL 3218723, at *7 (citing *United States v. White*, 990 F.3d 488, 492-493 (6th Cir. 2021).

Detective Clarke's affidavit included sufficient information to show a fair probability that evidence of the homicide would be at Claiborne's residence. The judge who issued the warrant had a "substantial basis for concluding that a search would uncover evidence or wrongdoing." *Sanders*, 2024 WL 3218723, at *2. The Court should not overturn the issuing judge's probable cause determination.

## While executing the search warrant, police saw large quantities of drugs in plain view.

Even if the search warrant affidavit did not establish probable cause that controlled substances would be at Claiborne's residence, police found the drugs in

16

plain view while lawfully present at Claiborne's home and while executing the warrant to search for the homicide evidence.

The plain view doctrine applies to "the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Horton v. California*, 496 U.S. 128, 135 (1990). It is not necessary that the police discovered the evidence inadvertently. *Id*. at 139 (If an officer "has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first."). For the plain view doctrine to apply, the officer must lawfully be "at the place from which the evidence could be plainly viewed." *Id*. at 136. The item must be in plain view, and "its incriminating character must also be 'immediately apparent.'" *Id*.

An officer does not need to "know" that an object is contraband or evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 741 (1983). But the officer must have "probable cause to associate the [seized] property with criminal activity. *Id*., at 741-42. When weighing whether an officer had probable cause to seize an item in plain view, it is proper to consider the officer's training and experience. *Id*., 742-43. The Sixth Circuit has instructed courts to examine these three factors to assess whether an object's incriminating nature is immediately apparent:

17

> (1)  a nexus between the seized object and the
> suspected criminal activity;
>
> (2)  whether the intrinsic nature or appearance of the
> seized object gives probable cause to believe that it is
> associated with criminal activity; and
>
> (3)  whether the executing officers can at the time of
> discovery of the object on the facts then available to them
> determine probable cause of the object's incriminating
> nature.

*United States v. Pacheco*, 841 F.3d 384, 395 (6th Cir. 2016).

Here the police, including DEA personnel with training in drug trafficking investigations, were lawfully searching Claiborne's residence for evidence of the homicide and they saw drugs and a digital scale in plain view during their search. The incriminating character of the drugs and digital scale were "immediately apparent." *See e.g., Pacheco* 841 F.3d at 395 (The incriminating nature of a "brick-like object" that "was wrapped in brown paper and bound together with tape" was immediately apparent.); *United States v. Blair*, 214 F.3d 690, 698 (6th Cir. 2000) (The incriminating nature of an "open pill vial," "a clear plastic bag containing a hard off white substance" and "boxes of syringes" was readily apparent.)

At an evidentiary hearing, the government anticipates that the officers who seized the drugs and scale will testify that the incriminating nature of drugs and scale were readily apparent when they found them. The photos of the objects show the items when officers seized them. The bags depicted in the photos are consistent

18

with distribution quantities of controlled substances, and the digital scale—which
had white powder residue on it and was in the garage—was likely used to weigh
drugs prior to distribution.

In addition to the intrinsic nature of the items, the officers will also testify
that they suspected that Claiborne was involved in a drug trafficking conspiracy
with Clifton Terry and were investigating Claiborne even before Davis's homicide.

On October 1, 2021, when the officers found drugs and the scale in
Claiborne's house, they already knew a fair amount about his drug conspiracy. For
example, they knew that in March 2021, UPS had intercepted a package that was
addressed to Claiborne's residence but to a false name, "Tiffany Ownes" [sic]. The
package contained approximately ten pounds of suspected methamphetamine,
which was sealed in two metal cans. Investigators also had records showing other
similar shipments to Claiborne's residence addressed to "Tiffany Owens." They
had done surveillance of Claiborne and had seen him meeting with Clifton Terry
who they knew had previously sold drugs to an informant. They also had phone
records showing calls between Claiborne and Terry. And they were aware of
Claiborne's criminal history involving drug trafficking.

All of these facts were known before the search of Claiborne's residence
because they were set forth in a federal search warrant affidavit to obtain location
information for Claiborne's phone which was dated September 8, 2021—several

weeks before the execution of the homicide search warrant on October 1, 2021.

(Gov. Ex. 3, Search Warrant and Application for Phone Location Data).

The plain-view doctrine squarely applies to the drugs and scale that officers

seized during the execution of the homicide warrant at Claiborne's home. The

officers were lawfully present at Claiborne's residence where they saw the items in

plain view while executing the homicide search warrant. And it was "immediately

apparent" to the officers who seized the drugs and digital scale those items were

evidence of drug trafficking. The Court should not suppress the evidence.

**Alternatively, even if Detective Clarke's affidavit did not show probable cause, officers executed the search warrant in good faith so the Court should not suppress evidence.**

Even if the Court finds that the warrant affidavit did not establish probable

cause to search Claiborne's residence, the officers who conducted the search acted

with objective good faith, and therefore the evidence seized during the execution of

the warrant should not be suppressed. *See United States v. Leon*, 468 U.S. 897,

922-23 (1984).

The Supreme Court has repeatedly noted that exclusion of evidence "exacts

a heavy toll" on the justice system and society and is a "bitter pill" to be swallowed

only "when necessary." *Davis v. United States*, 564 U.S. 229, 237 (2011). *See also*

*Hudson v. Michigan*, 547 U.S. 586 (2006) ("Suppression of evidence . . . has

always been our last resort, not our first impulse.").

20

"When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis*, 564 U.S. at 238 (internal quotations omitted). "But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id.* (internal citations and quotations omitted.).

The threshold for showing that the police did not reasonably rely on the warrant "is a high one, and it should be." *Messerchmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012). "[I]n the ordinary case, an officer cannot be expected to question [a judge]'s probable-cause determination because it is the [judge]'s responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment...." *Id*. (internal quotes and citations omitted).

Claiborne claims that the good faith doctrine should not apply here because the affidavit "was so lacking in indicia of probable cause as to render official belief in their existence entirely unreasonable." (Def. Br., ECF No. 54, PageID.163). But Detective Clarke's lengthy affidavit was hardly a "bare bones" affidavit. Claiborne's argument is way off base.

21

The Sixth Circuit recently addressed what constitutes a so-called bare bones affidavit in *Sanders.* 2024 WL 3218723, at *9 (examining the "skeletal affidavits" that were identified in *Leon*.) Bare bones affidavits are those which "are either completely devoid of any nexus between the illegal activity and the place to be searched or the item to be seized … or merely state suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id*. (internal citations and quotations omitted.) "Put another way, bare bones affidavits nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied." *Id*. "[W]here an affidavit presents a modicum of evidence, however slight, showing some connection, regardless of how remote it may have been between the criminal activity at issue and location of the search, there exists a minimally sufficient nexus necessitating application of the good faith rule." *Id.*

As discussed above, Detective Clarke's affidavit demonstrated probable cause to search Claiborne's house for evidence of Davis's homicide, such as weapons, ammunition, cell phones, documents related to the Pontiac G-6, and other evidence of the homicide. The affidavit connected Claiborne to the Pontiac G-6 (it was registered to him and he had it at the car wash hours before the murder). It connected the Pontiac G-6 to the homicide (it drove through the apartment complex— along with the Ford Edge— and it appeared to be acting as a

look-out vehicle). And the affidavit connected the Pontiac G-6 and Claiborne back to Claiborne's residence (officers saw Claiborne and the G-6 there before and after the homicide and they saw the G-6 parked at the house within two days of applying for the warrant). Detective Clarke's affidavit showed probable cause that evidence of the homicide was located at Claiborne's home, and was it certainly sufficient for officers to rely on the warrant in good faith.  It did not "entirely fail to connect the evidence of wrongdoing to the place to be searched." *Sanders*, 2024 WL 3218723, at \*9.  The good faith doctrine should apply.

## Conclusion

The Court should not suppress the physical evidence seized from Claiborne's house. The affidavit established probable cause to search Claiborne's home for evidence of the homicide, and alternatively the police relied on the warrant in good faith. While officers were lawfully executing the search warrant, they saw drug evidence in plain view. The incriminating nature of the drug evidence was immediately apparent to them, especially based on their training and the facts they knew from investigating Claiborne and Terry for a drug conspiracy. Though the Court should conduct an evidentiary hearing to determine whether the physical evidence was in plain view, it should make its probable cause

determination and any determination regarding good faith solely on the "four corners" of the search warrant affidavit.

Respectfully submitted,

Dated: July 23, 2024

DAWN N. ISON
United States Attorney

s/Jules M. DePorre
Jules M. DePorre
Assistant United States Attorneys
600 Church Street
Flint, Michigan 48502
(810) 766-5177
Email: jules.deporre@usdoj.gov
P73999

## **CERTIFICATE OF SERVICE**

I certify that on July 23, 2024, I electronically filed the foregoing document, using the CM/ECF system which will send a copy to all registered parties.

s/Jules DePorre
United States Attorney's Office